UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHEILA GRIFFIN,

                              Plaintiff,

          v.

BRIGHTON DENTAL GROUP, et al.,

                              Defendants.
_____

DECISION & ORDER

09-CV-6616P

          *Pro se* plaintiff Sheila Griffin ("Griffin") commenced this action by filing a

complaint alleging that defendants Y.C. Mruthyunjaya ("Mruthyunjaya") and Brighton Dental

Group discriminated against her in her employment on the basis of her race, color, sex and

disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12112 *et seq*. (the "ADA").

(Docket # 1). Griffin thereafter sought leave to amend her complaint to add several defendants

and causes of action. (Docket # 19). This Court granted that motion in part, allowing Griffin to

add Dr. Ajay Dass ("Dass") as a defendant on the employment discrimination claims.[1] (Docket

# 27). Also pending before the Court is a counterclaim for defamation filed by Mruthyunjaya

against Griffin. (Docket # 5). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have

a United States magistrate judge conduct all further proceedings in this case, including the entry

of final judgment. (Docket # 14).

_____

[1] The opposition to the motion to amend did not challenge the sufficiency of the discrimination-based allegations against Dass, but merely challenged whether Dass was an appropriate party. (Docket # 21 at ¶¶ 4-10). Thus, the issue of the sufficiency of the discrimination-based claims has not previously been addressed by this Court.

1

Currently pending before the Court is a motion by the defendants, Dass, Mruthyunjaya and Brighton Dental Group (collectively, "defendants") to dismiss Griffin's amended complaint.[2] (Docket # 45). Griffin has opposed the motion and also has filed a motion to appoint counsel. (Docket # 48). For the reasons set forth below, I grant defendants' motion to dismiss the amended complaint without prejudice, grant Griffin leave to file a second amended complaint to cure the deficiencies identified below and deny Griffin's motion to appoint counsel.

## FACTUAL BACKGROUND

Griffin alleges the following facts, which are accepted as true for the purpose of considering this motion. Griffin began working at Brighton Dental Group on December 25, 2005. (Docket # 1 at ¶ 4). According to Griffin, during her employment she was subjected to disparate treatment and a hostile work environment and was wrongfully terminated. (Docket # 1 at ¶ 13 (a), (c) (f)-(g); # 28 at 1). In addition, Griffin contends that she was retaliated against after she complained about the discrimination. (Docket # 1 at ¶ 13 (h)-(i)). Griffin also alleges that she informed defendants of her disability in December 2005, and they subsequently failed to provide her with reasonable accommodations.[3] (*Id.* at ¶¶ 13 (e), 21). By checking boxes on the *pro se* form complaint, Griffin has alleged that she was discriminated against on the basis of her race, color, sex and disability. (*Id.* at ¶ 14).

---

[2] As defendants correctly note, Griffin's amended complaint does not restate or otherwise incorporate the allegations of her original complaint. (Docket # 45-1 at 1 & n. 1). Given Griffin's *pro se* status and the mandate to construe liberally a *pro se* litigant's allegations, the Court will consider the allegations in the original complaint (Docket # 1), those in the amended complaint (Docket # 28) and the allegations in her opposition papers (Docket # 48). *See Joseph v. Brooklyn Developmental Disabilities Servs. Office*, 2013 WL 151197, *1 n.1 (E.D.N.Y. 2013) (citing cases).

[3] Griffin asserts that she does not know when she first requested an accommodation. (*Id.* at ¶ 22).

Griffin alleges that she was "not treated the same as other." (Docket # 28 at 10, ¶ 4). Specifically, she contends that she was not given an evaluation and raise in December,[4] but had to wait until the following September to receive her review and raise. (*Id.* at 7, ¶ 3). By contrast, according to Griffin, another female dental assistant received her review in December. (*Id.*). In addition, Griffin alleges that she was not provided the same "employee dental opportunities" as other, unidentified employees. (*Id.* at 8, ¶ 6). Finally, in an affidavit accompanying her earlier motion to amend, Griffin asserts that she "could not speak back (Female)." (*Id.* at 10, ¶ 4).

With respect to her hostile work environment claim, Griffin alleges that she was physically assaulted twice while employed at Brighton Dental Group. (Docket # 1 at ¶ 19; # 28 at 7, ¶¶ 1, 4; # 48 at 3, ¶ 4). According to Griffin, in February 2008, another employee slapped her in the face.[5] (Docket # 28 at 7, ¶ 4). She claims that other employees witnessed the altercation, and she immediately reported the incident to Dass. (*Id.*). Griffin asserts that no action was taken with respect to the incident. (*Id.*). Griffin further alleges that Mruthyunjaya physically assaulted her on July 9, 2008.[6] (Docket # 28 at ¶ 1). She claims that she immediately

---

[4] Plaintiff does not provide the year in which this occurred.

[5] Plaintiff has identified the individual by name, but the complaint is unclear whether the individual is male or female, or was a co-worker or supervisor. (Docket # 28 at ¶ 4). Defendants assert that the individual was a female co-worker. (Docket # 21 at ¶ 16).

[6] Mruthyunjaya's counterclaim of defamation is based upon his allegation that Griffin falsely accused Mruthyunjaya of assault, for which he was charged, tried and ultimately acquitted, and continues to publish the false allegation. (Docket # 5 at ¶¶ 30-41).

In her original complaint, Griffin asserted that the assault occurred in July 2007. (Docket # 1 at ¶ 19). Griffin's amended complaint and her affidavit in opposition to this motion both allege that the incident occurred in July 2008. (Docket # 28 at 7, ¶ 1; # 48 at 3, ¶ 4). The July 2008 date is consistent with the police report, as well as Mruthyunjaya's allegations in his counterclaim. (Docket # 5 at ¶¶ 29-31; # 48 at 15).

told other employees about the assault and reported the assault to Dass. (*Id.*). Griffin asserts that she was unable to continue working as a result of the physical and emotional trauma she suffered, for which she received medical treatment. (*Id.*). According to Griffin, the doctor who examined her after the assault called 911, and Griffin provided a report to the police. (*Id.*).

Griffin asserts that, in addition to the assaults, she was subjected to "verbal and mental" harassment during her employment. (Docket # 1 at ¶ 19). Specifically, Griffin alleges that Mruthyunjaya would "verbully [*sic*] threaten [her] and would throw instruments around," causing her to fear for her safety. (Docket # 28 at 7, ¶ 2). In addition, Griffin alleges that Mruthyunjaya verbally attacked Griffin when she mispronounced his name. (*Id.*). Finally, Griffin claims that she was verbally harassed by the officer manager, Mary, and "ke[pt] in [the] office against her will" and that her complaints about such harassment were not addressed. (*Id.* at 8, ¶ 5).

Defendants seek dismissal of plaintiff's amended complaint in its entirety. (Docket # 45-1). According to defendants, Griffin's claim for disability discrimination must be dismissed because she has failed to allege sufficient facts from which to infer that she was disabled, that the defendants knew of her disability or that they discriminated against her by failing to grant accommodations for her disability. (Docket # 45-2 at 3). Defendants also maintain that Griffin's Title VII claims should be dismissed because Griffin has failed to allege sufficient facts from which to infer that the alleged mistreatment was motivated by a discriminatory purpose and because the conduct described, even if true, did not amount to a hostile environment. (*Id.* at 4).

<u>**DISCUSSION**</u>

**I.** <u>**Motion to Dismiss the Complaint**</u>

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

The plausibility standard applies to claims brought by *pro se* litigants. *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d at 475. "At the same time, . . . a 'document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* at 476 (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)). "A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to her lack of legal training." *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003). Thus, a court must construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the ... claim is and the

grounds upon which it rests.'" *Zucco*, 800 F. Supp. 2d at 476 (omission in original) (quoting *Boykin v. KeyCorp*, 521 F.3d at 214).

Employment discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 424 (S.D.N.Y. 2008). "Specifically, the plaintiff must first establish a *prima facie* case of employment discrimination, after which the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the alleged disparate treatment, thus shifting the burden back to plaintiff to establish that defendant's proffered legitimate non-discriminatory reason is mere pretext." *Doverspike v. Int'l Ordinance Techs.*, 817 F. Supp. 2d 141, 146 (W.D.N.Y. 2010), *aff'd*, 445 F. App'x 399 (2d Cir. 2011). On a motion to dismiss, however, a plaintiff claiming employment discrimination "need not allege specific facts establishing a *prima facie* case of employment discrimination or otherwise meet a heightened pleading standard." *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d at 424 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)); *see Williams v. New York City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam) ("[t]he *Swierkiewicz* holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers"). Rather, in order to defeat a motion to dismiss, a plaintiff's complaint "need only do what all complaints need do – allege facts plausibly suggesting a claim upon which relief can be granted." *Kriss v. Schenectady City Sch. Dist.*, 2010 WL 3338949, *6 (N.D.N.Y. 2010).

**A. <u>Disability Discrimination Claim</u>**

The ADA prohibits employers from discriminating against any "qualified individual on the basis of disability in regard to" any aspect of that individual's employment. 42

6

U.S.C. § 12112(a). A disabled individual within the meaning of the ADA is an individual who: (i) has "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (ii) has "a record of such impairment"; or (iii) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing and working, and must be of central importance to daily life." *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 409 (E.D.N.Y. 2010) (internal quotations omitted) (citing 29 C.F.R. § 1630.2(h)(2), (i) and *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002)).

"Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). As the Second Circuit has held, "an employer has a duty reasonably to accommodate an employee's disability if . . . the employer knew or reasonably should have known that the employee was disabled." *Id.* at 135.

A careful review of Griffin's complaint and amended complaint reveals an absence of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. As an initial matter, Griffin has failed to identify or describe her alleged disability and has not alleged any facts to suggest that she suffers from any impairment that substantially limits one or more of her major life activities. Further, although she has alleged in her complaint that she disclosed her disability to the defendants in December 2005, she has not identified any reasonable accommodations that she requested or which defendants refused.

7

Indeed, according to the complaint, Griffin worked as a dental assistant for several years, apparently without any accommodation; she has not alleged how defendants' purported failure to accommodate her disability adversely affected her employment.

In sum, Griffin has failed to allege facts to state a plausible claim that she was disabled within the meaning of the ADA, that defendants knew of her disability and refused to grant reasonable accommodations and that their refusal negatively affected her employment. Accordingly, her claim for discrimination on the basis of disability under the ADA must be dismissed. *See Cusack v. Delphi Corp.*, 686 F. Supp. 2d 254, 257-58 (W.D.N.Y. 2010) (plaintiff's allegations that he suffered from severe depression failed to state plausible claim for disability discrimination because he failed to allege facts to suggest that the disability substantially limited major life activity); *Kriss v. Schenectady City Sch. Dist.*, 2010 WL 3338949 at *13-14 (dismissing disability discrimination claim where plaintiff failed to allege facts suggesting that his alleged impairments substantially limited major life activity or that he provided notice to employer that impairment rendered him disabled under ADA); *Doverspike v. Int'l Ordinance Techs.*, 817 F. Supp. 2d at 150 (dismissing disability discrimination claim where plaintiff failed to allege facts suggesting that alleged impairments substantially limited major life function and where complaint was "devoid of any allegations regarding what impact, if any, [p]laintiff's history of [impairments] had on [p]laintiff's ability to work"); *Lee*, 557 F. Supp. 2d at 424-25 (dismissing disability discrimination claims "because plaintiff fail[ed] to plead that she could not perform any major life activity, and because she plead[ed] no facts tending to suggest that anyone discriminated against her because of any disability").

Indeed, Griffin's only allegations about impairments concern emotional and physical trauma suffered as a result of her alleged assault by Mruthyunjaya. Specifically, Griffin alleges that after the alleged assault, she suffered "[p]ain in neck and headache," which rendered her "physically and emotionally unable to work." (Docket # 28 at 7, ¶ 1). According to Griffin, she had to "receive mental health counseling and medical services." (Docket # 1 at ¶ 19). Even if her condition constituted a cognizable disability, these allegations do not plausibly state a disability discrimination claim because they are devoid of any claim that defendants discriminated against her at work because of such disability. *See Lee*, 557 F. Supp. 2d at 425 (allegations that as a result of a physical altercation with supervisor, plaintiff suffered back, neck and psychological injuries that precluded her return to work did not state a claim for disability discrimination; "the mental and/or physical fallout from the discrimination that was allegedly practiced against [the plaintiff] does not give rise to an independent claim for disability discrimination – rather it goes to the issue of damages on her underlying discrimination claim"); *see Caronia v. Hustedt Chevrolet*, 2009 WL 909729, *11 (E.D.N.Y. 2009) (granting summary judgment where plaintiff could not show she suffered adverse action because of her disability; rather, allegations were that defendant's "harassment resulted in her health issues, not that she was harassed because of her health").

Moreover, in her opposition to the motion to dismiss, Griffin alleges that she was unable to return to work because she was unable to work with Mruthyunjaya or her co-workers. (Docket # 48 at 1). These allegations plainly do not state a disability discrimination claim. *See Lee*, 557 F. Supp. 2d at 425 ("[p]laintiff's inability to work under a particular supervisor does not give rise to an independent claim for disability discrimination") (collecting cases).

9

## B. **Title VII Discrimination Claims**

Title VII prohibits an employer from discriminating against any individual on the basis of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that '(1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing [her] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class.'" *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005)). Evidence that an individual was treated differently from other employees, standing alone, is insufficient to prove discrimination. *Garzon v. Jofaz Transp., Inc.*, 2013 WL 783088, *3 (E.D.N.Y. 2013) (citing *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002)). "It is axiomatic that mistreatment at work ... is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (omission in original) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

An inference of discriminatory intent may be based upon evidence that other, similarly-situated employees who were not members of the plaintiff's protected class were treated more favorably than the plaintiff. *See Liebowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). An inference of discrimination may also arise from evidence that the plaintiff was subjected to offensive treatment directed at plaintiff's membership in a protected class, such as "name-calling, slurs, or bad jokes, or . . . references adverse to [p]laintiff's beliefs, ethnicity,

gender or age." *Doverspike*, 817 F. Supp. 2d at 148-49. Moreover, to be cognizable under Title VII, "the action that is alleged to be gender-based must rise to the level of an 'adverse employment ... action.'" *Patane v. Clark*, 508 F.3d at 112 (quoting *Dawson v. Bumble & Bumble*, 398 F.3d at 216)).

In this case, plaintiff's assertions of disparate treatment appear to be based, in part, on allegations that she was not provided the same "employee dental opportunities," or given her performance evaluation and raise on the same schedule, as other employees. Although Griffin has properly alleged that she was treated differently from other employees, she has not alleged any facts from which to infer that the reason she received different treatment was because of her gender or race. Griffin has not alleged what she means by "employee dental opportunities," nor has she identified the race or gender of the employees who received the better "opportunities" than she. In addition, although Griffin has alleged that another dental assistant allegedly received an increase in pay before she did, her complaint alleges that this other assistant is also female; her race is not alleged. Similarly, while plaintiff has alleged in her earlier motion to amend that she "could not speak back (Female)," she has not alleged what she means by "speak[ing] back" or whether employees of different races or genders were permitted to "speak back." Nor does her complaint identify the races of any of her supervisors or the defendants. *See Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 415 (W.D.N.Y. 2010) (plaintiff "alleges in a conclusory fashion" that he suffered discrimination on account of his race, but fails to allege facts to support that assertion; "it is not entirely apparent from the pleadings what [plaintiff's] or defendants' race or ethnic backgrounds are").

Griffin's failure to allege facts demonstrating or suggesting that the other employees who were treated more favorably than she were of a different race or gender prevents the Court from determining whether she has adequately stated a claim of disparate treatment discrimination. In the absence of such allegations, Griffin's claim that she suffered disparate treatment must be dismissed. *See*, *e.g.*, *Patane*, 508 F.3d at 112-13 (district court properly dismissed complaint that alleged no "factual circumstances from which a gender-based motivation for [an adverse employment action] might be inferred"); *Rolle v. Educ. Bus Transp., Inc.*, 2013 WL 783026, *11-13 (E.D.N.Y.) (dismissing complaint where plaintiff alleged that she received less favorable treatment than other employees, but failed to allege facts to suggest that treatment was result of unlawful discrimination, such as "discriminatory remarks or details about the race, gender or age of the employees who allegedly received more favorable treatment"), *report and recommendation adopted*, 2013 WL 783011 (E.D.N.Y. 2013); *Joseph v. Brooklyn Developmental Disabilities Servs. Office*, 2013 WL 151197 at *8 (dismissing complaint where plaintiff alleged different treatment, but did not allege that employer criticized him in "ethnically degrading terms, . . . made invidious comments about his race, gender or Haitian nationality" or that "more favorable treatment" was afforded employees not in the protected group); *Acosta v. City of New York*, 2012 WL 1506954, *5 (S.D.N.Y. 2012) ("the *sine qua non* of a race-based discrimination or retaliation claim is that discrimination or retaliation was *because of race*"; thus, discrimination claims must be dismissed where plaintiff "fails to connect the dots between the alleged adverse actions and his membership in a protected class"); *Doverspike*, 817 F. Supp. 2d at 148 (dismissing complaint where plaintiff failed to allege that any other employee who was not a member of a protected class was permitted to continue working despite being unable to

maintain requisite pace); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010) (dismissing complaint where allegations suggested that plaintiff was terminated because of a poor working relationship with supervisor, but complaint failed to "hint[] that race motivated or that age caused the tensions between" plaintiff and her supervisor; noting plaintiff "has not identified any similarly situated individual outside of her protected race and age classes, who was treated any differently under similar circumstances"); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp. 2d 305, 308-09 (W.D.N.Y. 2007) (dismissing complaint where plaintiff alleged discrimination on the basis of race, sex and national origin, but failed "to allege facts upon which it could be inferred that plaintiff's race [or] gender . . . played any role in defendant's actions *vis-a-vis* plaintiff"), *aff'd*, 306 F. App'x 687 (2d Cir. 2009).

## C. Hostile Work Environment Claim

"A hostile work environment claim requires a showing (1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The test for whether an environment is hostile has both a subjective and objective component. *Id.* at 374. Thus, "the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Further, although the harassing incidents generally must be "more than episodic" to state a claim for hostile work environment, "it is well settled in this Circuit that even a single

act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* "In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)) (internal quotation omitted). In addition, the plaintiff must allege facts suggesting that the hostility is directed at plaintiff "as a result of [her] membership in a protected class." *Acosta v. City of New York*, 2012 WL 1506954 at *7 (citation omitted).

I conclude that Griffin has sufficiently alleged that she worked in a hostile environment, but, as with her disparate treatment claims, she has failed to allege sufficient facts from which to plausibly infer that the hostility was based on her gender or race. Griffin alleges that she was physically assaulted twice, that one of her supervisors threw instruments and verbally abused and threatened her, and that the office manager verbally harassed and intimidated her. Such conduct is sufficiently severe and pervasive to constitute a hostile work environment. *Cortes v. City of New York*, 700 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) ("[p]laintiff has alleged a series of facts that plausibly suggest that his work environment was severely compromised . . . by physical assault, a pattern of alleged retaliation and mistreatment, and threatening comments"); *Goins v. Bridgeport Hosp.*, 2011 WL 8831462, *3 (D. Conn. 2011) (plaintiff sufficiently alleged "an environment . . . palpably hostile" based on conduct that included two incidents of "threatening physical contact").

Although the alleged conduct may be sufficiently severe to establish a hostile work environment, Griffin has failed to allege that the conduct occurred because of her race or

gender. For example, her complaint fails to allege that either alleged assault was motivated by or occurred because of her race or gender. Griffin has not described the circumstances surrounding the assaults, and the Court is thus unable to determine whether they give rise to a reasonable inference of racial or gender motivation. Nor has Griffin alleged whether Mruthyunjaya or the office manager engaged in similar conduct directed towards male employees or employees of different races. In the absence of factual allegations suggesting that Griffin was assaulted, intimidated or harassed because of her gender or race, her hostile environment claim must be dismissed. *See Joseph*, 2013 WL 151197 at *10 (dismissing hostile environment claim where plaintiff failed to raise plausible inference that the alleged "intimidation, ridicule and insult that he was subjected to was related to his race, gender or national origin[;] [a]ccordingly, [the plaintiff] [has] fail[ed] to state a claim that the work environment . . . was so permeated with *discriminatory* intimidation, ridicule, and insult so as to alter the conditions of his employment") (internal quotation omitted); *Acosta*, 2012 WL 1506954 at *8 (dismissing hostile environment claim where there were "no allegations that any animus subjective or objective stemmed from plaintiff's membership in a protected class . . . [;] [thus, complaint] does not create a plausible inference of hostility based upon race or national origin").

### D.  Retaliation and Unlawful Termination Claim

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115. In this case, the only allegations that may be construed as protected activity are Griffin's

reports to Dass of the alleged assaults and her reports to an unidentified supervisor of the office manager's alleged harassment.[7]  (Docket # 28 at 7, ¶¶ 1, 4-5).  Griffin has failed to allege, however, that defendants took any adverse employment action against her as a result of her reports.

Although Griffin claims that she was unlawfully terminated, she has made no factual allegations in the complaint about the circumstances of her termination.  For example, her complaint does not state when she was terminated (which may or may not establish temporal proximity between the reports and the termination) or what reason, if any, she was provided for the termination.  In the absence of factual allegations that plaintiff was terminated or suffered some other adverse employment action by defendants[8] because of her complaints, her claims for retaliation must be dismissed.  *See Lee*, 557 F. Supp. 2d at 426 (dismissing retaliation claim where the complaint failed to allege "what the adverse employment actions that were taken in retaliation were").

### E.  Leave to Amend

"Dismissals without leave to amend are generally disfavored, and *pro se* plaintiffs typically should be afforded an opportunity to amend their complaints."  *McCracken v. Brookhaven Sci. Assocs. LLC*, 376 F. App'x 138, 139 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 914

---

[7]  Griffin's police report concerning the alleged assault may also constitute protected activity provided the defendants were aware of the report and took an adverse action as a result of the report.  *See Williams v. City of New York*, 2006 WL 2668211, *20 (E.D.N.Y. 2006) ("reporting harassment to the police and initiating criminal proceedings against alleged harassers are protected activities") (collecting cases).

[8]  Although defendants' opposition to Griffin's previous motion to amend her complaint suggests that her termination claim relates to termination by a different employer (Docket # 21 at ¶¶ 21-22), Griffin's response to Mruthyunjaya's counterclaim contains a letter signed by Dass on Brighton Dental Group stationery terminating her employment (Docket # 13 at 14).

(2011).  Accordingly, courts "should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

Although Griffin's amended complaint does not plausibly state claims for relief based on the allegations contained therein and in her initial complaint, other allegations outside the complaints suggest that Griffin may be able to adequately state at least some of her claims. For instance, in response to Mruthyunjaya's counterclaim, Griffin alleged that Mruthyunjaya assaulted her because she was female and stated, "how dare [she] speak back to him, because [she is] a female."  These allegations purport to connect the challenged conduct with her status as a member of a protected group.[9]  (Docket # 13 at ¶ 2).

In her answer to the counterclaim, Griffin also asserts that she was discriminated against because of her status as an African American, an allegation that is not contained in her complaints.  (Docket # 13 at ¶ 9).  Finally, she attaches to her answer a letter dated July 10, 2008 from Brighton Dental Group, signed by Dass, terminating plaintiff's employment.  (*Id.* at 14). The letter suggests that plaintiff was terminated the day after the alleged assault by Mruthyunjaya.  (*Id.*).

On this record, although dismissal of the amended complaint is justified, Griffin should be given leave to file a second amended complaint to address the deficiencies identified in this opinion.  Specifically, if Griffin wishes to proceed in this action, she must file a second

---

[9]    She has further alleged in an affidavit accompanying her earlier motion to amend that she "could not speak back (Female)."  (Docket # 28 at 10, ¶ 4).

amended complaint by no later than **April 30, 2013**. The complaint should incorporate into one proposed amended complaint all of the allegations she wishes to include, whether they were previously asserted in her complaint, the amended complaint, the response to the counterclaim, in other papers, or have not previously been alleged. In addition, Griffin should attempt to allege as clearly as possible:

(1) with respect to any claim for disability discrimination she wishes to assert, the disability from which she suffered at the time of her claim, whether and, if so, how her disability substantially limited any life activity, how and when she informed the defendants of her disability, the reasonable accommodations, if any, that she requested from the defendants and whether such accommodation(s) were provided, and any adverse employment action she suffered because of the disability;

(2) with respect to any claim for disparate treatment, the manner in which employees of different races or genders were treated more favorably by defendants than she, and identify the race and gender of those employees;

(3) with respect to any claim for hostile work environment, the facts that suggest that she was subjected to the conduct which she claims constitutes a hostile work environment because of her race or gender;

(4) with respect to any claim for retaliation, the conduct that she engaged in that constitutes protected activity, the adverse action that she was subjected to because of her protected activity and any facts from which to infer that the adverse action was related to her protected activity; and,

(5) with respect to any claim for unlawful termination, when and how she was terminated, who notified her of the termination and any facts from which to infer that the termination occurred because of her gender or race or in retaliation for her involvement in protected activity.[10]

## II.  Motion to Appoint Counsel

It is well-settled that there is no constitutional right to appointed counsel in civil cases.  Although the Court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see*, *e.g.*, *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such assignment of counsel is clearly within the judge's discretion.  *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984).  The factors to be considered in deciding whether or not to assign counsel include the following:

1.      Whether the indigent's claims seem likely to be of substance;

2.      Whether the indigent is able to investigate the crucial facts concerning his claim;

3.      Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4.      Whether the legal issues involved are complex; and

5.      Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

---

[10]  The above outline is neither exhaustive, nor is every element listed necessarily mandatory.  Of course, the sufficiency of any second amended complaint submitted by Griffin may be challenged by defendants on a subsequent motion to dismiss if they believe the complaint is still deficient.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider the issue of appointment carefully, of course, because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co.*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

In this case, Griffin has filed a fourth motion to appoint counsel. The Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards promulgated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 58, that the appointment of counsel is not warranted at this time. As stated above, a plaintiff seeking the appointment of counsel must demonstrate a likelihood of success on the merits. *See id.* In the present case, Griffin's claims have not survived a motion to dismiss, although she has been given the opportunity to amend her claims. The legal issues in this case do not appear to be complex, although it does it appear that if Griffin is able to state a claim that proceeds to trial, conflicting evidence likely will implicate the need for some cross-examination. Based on this

review, Griffin's motion for appointment of counsel is denied without prejudice at this time.  It is Griffin's responsibility to retain an attorney or press forward with this action *pro se*.

<u>**CONCLUSION**</u>

For the reasons stated above, defendants' motion to dismiss **(Docket # 45)** is **GRANTED without prejudice**.  If Griffin wishes to pursue any or all of her claims against the defendants, she must file a second amended complaint by no later than **April 30, 2013** that incorporates all of the claims and allegations on which she wishes to proceed into one second amended complaint and addresses the deficiencies identified in this opinion.  Griffin's motion to appoint counsel **(Docket # 48)** is **DENIED without prejudice**.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        March   25  , 2013